# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SERENA RICHTER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 15-775 |
| ) | |
| v. ) | Judge Cathy Bissoon |
| ) | |
| PENNSYLVANIA STATE POLICE, *et al*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER

For the reasons stated below, Defendant Heneks's Motion to Dismiss (Doc. 25) and Defendants Weaver, Fagnilli and Wilson's Motion to Dismiss (Doc. 27) will be granted in part and denied in part.

## BACKGROUND

This civil rights lawsuit stems from a fatal car crash that occurred on or about June 16, 2011, and the ensuing investigation and criminal prosecution. See generally Am. Comp. (Doc. 23). According to the allegations in the Amended Complaint, Plaintiff Serena Richter was a passenger in a vehicle driven by Samuel McKnight "when the vehicle left the roadway, impacted a utility pole and/or a wooden fence post, and rolled over several times." (Doc. 23) at ¶ 10. Mr. McKnight was ejected from the vehicle and died. Id.

Two years after the incident, a criminal complaint was filed against Plaintiff charging her with Homicide by Vehicle While Driving Under the Influence, Homicide by Vehicle, Driving Under the Influence of Alcohol and Driving on Roadways Laned for Traffic, Careless Driving and Occupant Protection. Id. at ¶ 20.

Three Pennsylvania State Police Troopers investigated the incident, Robert. F. Wilson ("Trooper Wilson"), John P. Weaver ("Trooper Weaver"), and Gino Fagnilli ("Trooper Fagnilli"), (collectively the "PSP Defendants"). Id. at ¶¶ 11-13. According to the Amended Complaint, Trooper Wilson took control of the investigation and was responsible for directing collection of evidence, interviewing witnesses, and making investigative decisions. Id. at ¶ 11. Trooper Weaver specializes in accident reconstruction and was involved in determining the position of passenger and driver. Id. at ¶ 12. Trooper Fagnilli was responsible for eye witness interviews. Id. at ¶ 13. Fayette County District Attorney Jack R. Heneks, Jr. ("D.A. Heneks") also participated in the investigation that led to the charges against Plaintiff and signed the criminal information that was filed against Plaintiff. Id. at ¶¶ 18, 23.

Plaintiff stood trial before the Honorable Nancy D. Vernon of the Court of Common Pleas of Fayette County. Id. at ¶ 25. On January 8, 2015, Judge Vernon entered a Judgment of Acquittal on all counts pursuant to Pennsylvania Rule of Criminal Procedure 608. Id.

As a result of these events, Plaintiff filed the instant lawsuit against Troopers Wilson, Weaver and Fagnilli, in their official capacities, and against D.A. Heneks, individually and in his official capacity. Specifically, Plaintiff alleges the following causes of action under 42 U.S.C. § 1983: False Arrest (Count I), Malicious Prosecution (Count II) and Violation of Substantive Due Process (Count III). Count VI alleges False Arrest and Abuse of Process in violation of state law and Count V alleges Malicious Prosecution in violation of state law. See generally Am. Compl. (Doc. 23).

All Defendants filed Motions to Dismiss (Docs. 25 and 27), pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure, asserting *inter alia* that the claims cannot go forward due

to absolute prosecutorial immunity by D.A. Heneks and derivative prosecutorial immunity by the PSP Defendants. The Court will address these arguments in turn.

**ANALYSIS**

As a preliminary matter, Plaintiff concedes that all allegations and claims are sufficiently covered by her federal False Arrest and Malicious Prosecution claims. Accordingly, she withdraws Counts III, VI and V. See. (Doc. 33) at 12-13; Doc. 34 at 10. Additionally, Plaintiff concedes that all allegations and claims are sufficiently covered by her claims against D.A. Heneks in his personal capacity. (Doc 33) at 13. Accordingly, she withdraws the allegations against D.A. Heneks in his official capacity. Id.

D.A. Heneks argues that, as a preliminary matter, he enjoys absolute prosecutorial immunity from any and all of Plaintiff's claims. (Doc. 26) at 7. Specifically, he claims that his alleged conduct is within the scope of his prosecutorial duties, thus entitling him to absolute immunity. Id. at 10-12.

To establish entitlement to absolute immunity, a "prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question." Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008). "This inquiry focuses on the nature of the function performed," since "immunity attaches to actions intimately associated with the judicial phases of litigation, but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." Id. (internal quotations and citations omitted). A prosecutor's activities are protected when they "are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." Burns v. Reed, 500 U.S. 478, 494 (1991). Said another way, "when a prosecutor performs the investigative functions normally performed by a detective or police officer, the prosecutor is entitled only to the same qualified immunity already enjoyed by

3

such law enforcement officials." Buckley v. Fitzsimmons, 509 U.S. 259, 276 (1993). That this investigation ended with the filing of criminal charges against Defendant does not necessarily mean that all of D.A. Heneks's activities preceding those charges are entitled to absolute immunity. "[W]here the role as advocate has not yet begun ... or where it has concluded, absolute immunity does not apply." Yarris v. County of Delaware, 465 F.3d 129, 137 (3d Cir. 2006) (quoting Spurlock v. Thompson, 330 F.3d 791, 799 (6th Cir.2003)) (internal quotation marks omitted). With these principles in mind, the Court will turn to the specific actions D.A. Heneks is alleged to have taken, to determine whether he is entitled to absolute immunity.

Plaintiff alleges a number of facts regarding D.A. Heneks's participation in the investigation, as distinct from the prosecution, of the June 16, 2011 incident. Specifically, she alleges his activity included "collecting evidence, retaining evidence in his custody, and directing investigative activities." (Doc. 23) at ¶ 17. The Amended Complaint also contains allegations that D.A. Heneks participated by:

> [R]eceiving and retaining in his custody statements from witnesses who identified [someone other than Plaintiff] as the driver of the [vehicle]; receiving and retaining in his custody an analysis by a retired state trooper which demonstrated that Richter could not be the driver; and participating in discussion with Weaver and Wilson regarding the conduct and planning of their investigation.

Id. at ¶ 18. Additionally, Plaintiff alleges that D.A. Heneks failed to direct PSP Defendants to collect Plaintiff's DNA to compare with DNA found in the vehicle. Id. at ¶ 19. Notably, the investigatory activities occurred "shortly after the accident took place and ended well before a decision was made to initiate criminal charges against Richter." Id. at ¶ 17.

The Court finds D.A. Heneks's alleged investigatory role to be sufficiently distinct from the more traditional prosecutorial functions. These are functions traditionally performed by law enforcement personnel and alleged to have occurred substantially prior to any decision to

4

prosecute.  That the investigatory conduct may have given rise to information that helped inform D.A. Heneks's decision whether to pursue the prosecution does not automatically render it prosecutorial.  See Burns, 500 U.S. at 494.  D.A. Heneks, accordingly, is not entitled to absolute immunity for his alleged investigatory conduct, as set forth in the Complaint.  Conversely, D.A. Heneks's other alleged conduct – filing a warrant unsupported by probable cause and filing a criminal information unsupported by probable cause – are, indeed, traditional prosecutorial functions and precisely the type of behavior and decision-making the absolute immunity doctrine has been developed to protect.

Having reached these conclusions, the Court observes that D.A. Heneks asserts the defense of absolute immunity as to all of Plaintiff's claims, including Plaintiff's claim for Malicious Prosecution (Counts II).  The focus of Plaintiff's malicious prosecution allegation is inevitably D.A. Heneks's role and function as prosecutor, rather than his investigatory conduct.  Assuming that Plaintiff could maintain her federal malicious prosecution claim against D.A. Heneks, the Court concludes that D.A. Heneks is absolutely immune from those claims.  See Jones v. Middletown Twp., 253 Fed. Appx. 184, 190 (3d Cir. Nov. 8, 2007) (affirming dismissal of malicious prosecution claim on the basis that the district attorney "acted within the scope of her duties as a prosecutor . . . and the decision on whether or not to initiate or prosecute a case is completely discretionary"); see also Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976).

Accordingly, Defendant Heneks's Motion to Dismiss as to Count I will be denied to the extent that Plaintiff's Claim for False Arrest is based on D.A. Heneks's conduct that constituted administrative or investigative actions, and otherwise will be granted.  His Motion with respect to Count II will be granted.

The PSP Defendants similarly argue that they are entitled to derivative prosecutorial immunity from Plaintiff's federal constitutional claims. (Doc. 28) at 3. They claim that because their alleged activity was in conjunction with D.A. Heneks's they should be entitled to the same level of immunity. Id. As authority for their position, the PSP Defendants point to cases where courts have found that derivative prosecutorial immunity applies. See e.g. Davis v. Grusemeyer, 996 F.2d 617, 631 (3d. Cir. 1993) (overruled on other grounds); Gregg v. Pettit, 2009 WL 57118, (W.D. Pa. 2009). In the cited cases, the detectives, investigators or officers were either employed or specifically retained by a prosecutor's office and performing tasks that are "intimately associated with the judicial phase of the criminal process." Davis, 996 F.2d at 631. However, there are no allegations in the Amended Complaint that support a conclusion that the PSP Defendants were functioning as extensions of the District Attorney's office in this matter. The PSP Defendants were on the scene and involved with the investigation prior to the involvement of D.A. Heneks. While Defendants allegedly worked in concert to investigate the crash and to pursue criminal charges against Plaintiff, the Amended Complaint only supports the position that the PSP Defendants were engaged in functions traditional to officers of the law. See (Doc. 23) at ¶¶ 11-13. Accordingly, the Court finds the PSP Defendants are not entitled to derivative prosecutorial immunity.

Having reached this conclusion, however, the Court finds that Plaintiff's Malicious Prosecution claim requires separate analysis. The very basis of a claim for Malicious Prosecution against a police officer rests on the premise that the police officer in question had authority or control over the decision to initiate criminal proceedings.

> Generally, it is the prosecutor, not the police officer, who is responsible for initiating a proceeding against a defendant. See Albright, 510 U.S. at 279 n. 5, 114 S.Ct. 807 (Ginsburg, J. concurring). An officer may, however, be considered to have initiated a criminal proceeding if he or she "knowingly provided false information to the prosecutor

6

or otherwise interfered with the prosecutor's informed discretion." Merrero v. Micewski, No. Civ. A. 96–8534, 1998 WL 414724, at *6 (E.D.Pa. July 22, 1998) (citations omitted); accord Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir.1996)."

Gatter v. Zappile, 67 F. Supp. 2d 515, 521 (E.D. Pa. 1999), aff'd, 225 F.3d 648 (3d Cir. 2000). The only allegations in the Amended Complaint that plausibly support a conclusion that any of the PSP Defendants were involved in the initiation of the criminal action is the statement that Trooper "Weaver filed a criminal complaint." While scant, the Court views this as sufficient at this early juncture for Plaintiff's Malicious Prosecution claim to survive as to Trooper Weaver. However, the Amended Complaint is devoid of similar allegations against Troopers Wilson and Fagnilli.

Accordingly, Defendants PSP's Motion to Dismiss as to Count I will be denied and as to Count II, will be granted as to Troopers Wilson and Fagnilli, without prejudice to amendment, and denied as to Trooper Weaver.

## ORDER

Consistent with the foregoing, Defendant Heneks's Motion to Dismiss (**Doc. 25**) will be **GRANTED IN PART and DENIED IN PART** and the PSP Defendants' Motion to Dismiss (**Doc. 27**) will be **GRANTED IN PART and DENIED IN PART**. Specifically, Count I is **PARTIALLY DISMISSED** as to D.A. Heneks insofar Plaintiff's Claim for False Arrest is not based on D.A. Heneks's conduct that constituted administrative or investigative actions. Count II is **DISMISSED** as to D.A. Heneks and Troopers Wilson and Fagnilli, without prejudice. Should Plaintiff, consistent with Rule 11, wish to file an amended complaint as to Count II against Troopers Wilson and Fagnilli, that amended complaint shall be filed no later than October 7, 2016. Plaintiff should be aware, however, that absent unforeseen and extraordinary

7

circumstances, no further amendments will be permitted. Although, generally, leave to amend freely is given, this rule cannot be read so broadly as to allow or require the Court and opposing parties to entertain endless requests for amendment. The purpose of Federal Rule 15 is not "to make the complaint 'a moving target,'" Minter v. Prime Equip. Co., 451 F.3d 1196, 1206 (10th Cir. 2006), and any further requests for amendment likely will raise significant issues regarding undue delay and prejudice. Accordingly, if Plaintiff chooses to file a Second Amended Complaint, her Second Amended Complaint must make a last, best effort to state any and all allegations as to Count II against Troopers Wilson and Fagnilli.


September 29, 2016                         s/Cathy Bissoon
                                           Cathy Bissoon
                                           United States District Judge

cc (via ECF email notification):

All Counsel of Record