IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SERENA RICHTER, | ) |
| Plaintiff, | ) Civil Action No. 15-775 |
| v. | ) Judge Cathy Bissoon |
| PENNSYLVANIA STATE POLICE, *et al.*, | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

Pending before the Court is Defendant Jack R. Heneks's ("Heneks's") Motion for Summary Judgment (Doc. 61). For the reasons stated below, Defendant's Motion will be denied.

**BACKGROUND**[1]

The Court will recite only those facts that are material to resolving Defendant Heneks's motion.[2] This civil rights lawsuit stems from a fatal car crash that occurred on June 16, 2011, and the ensuing investigation and criminal prosecution. (See Plaintiff's Statement of Facts[3] at ¶

---

[1] Heneks has filed a "Concise Statement of Material Facts Not in Dispute," (Doc. 63), and Plaintiff has filed, in response, a "Concise Statement of Material Facts in Dispute," (Doc. 76). For ease of reference, the Court will refer to these, respectively, as "Heneks's Statement of Facts" and "Plaintiff's Statement of Facts." Neither party has filed a reply to their respective opposing party's statement of facts.

[2] There is a pending Motion for Summary Judgment (Doc. 69) filed by the Pennsylvania State Police Trooper ("PSP") Defendants in this case. The Court will address that motion, and state additional facts that are material to resolving that motion, in a forthcoming memorandum and order.

[3] Plaintiff's Statement of Facts does not comply with Local Rule 56(C)(1)(a), which requires Plaintiff to admit or deny each fact contained in the moving party's statement of facts. In addition, Plaintiff's Statement of Facts does not comply with the undersigned's Practices and Procedures, which require the responding party to "include a reprint of each original fact statement, followed by the response, seriatim." Practices and Procedures of Judge Cathy Bissoon, § II.D (available at www.pawd.uscourts.gov/sites/pawd/files/JudgeBissoon-Chamber-

1, Doc. 76; Heneks's Statement of Facts at ¶¶ 1, 70, Doc. 63.) Heneks, at all times relevant to this action, was the District Attorney of Fayette County, Pennsylvania. (Heneks's Statement of Facts at ¶ 80.)

Plaintiff Serena Richter states that she was a passenger in a vehicle driven by Samuel McKnight ("McKnight") "when the vehicle left the roadway, impacted a utility pole and/or a wooden fence post, and rolled over several times." (Amended Complaint at ¶ 10, Doc. 23). McKnight was ejected from the vehicle and died. (Plaintiff's Statement of Facts at ¶ 1; Heneks's Statement of Facts at ¶ 1.) Two years after the incident, on June 14, 2013, a criminal complaint was filed against Plaintiff charging her with Homicide by Vehicle While Driving Under the Influence, among other related charges. (See Exhibit G to Heneks's Appendix to Statement of Facts, hereinafter "Heneks's Appendix," at 2, Doc. 64-7.)

Three Pennsylvania State Police ("PSP") Troopers investigated the incident, Robert. F. Wilson ("Wilson"), John P. Weaver ("Weaver"), and Gino Fagnilli ("Fagnilli"). (Complaint at ¶¶ 11-13; Heneks's Answer at ¶¶ 11-13). Plaintiff alleges that Heneks also played a role in the investigation. (Plaintiff's Statement of Facts at ¶¶ 2, 5, 7, 9.) For example, she provides evidence that prior to the filing of criminal charges, Heneks spoke to Weaver about whether to submit certain items containing blood for collection of DNA evidence.[4] (Plaintiff's Statement of

---

Rules-Revised-20170214.pdf). Plaintiff's Statement of Facts thus fails to address many of Heneks's facts. Plaintiff's statement also includes additional facts to which Heneks has not responded. The Court will generally assume that facts to which the opposing party has not responded are undisputed, unless there is clear evidence of a dispute from the parties' submissions. See Fed. R. Civ. P. 56(e)(2), (4).

[4] Weaver stated in his deposition that "what was submitted [for testing] was [sic] things that I had discussed with the prosecutor and reasons why or why not to submit it, and the decision was that the only thing we wanted to submit to the lab for DNA analysis was [sic] the air bags." (Exhibit D to Plaintiff's Appendix to Statement of Facts at 78–79, Doc. 86-3.) Heneks maintains that although he "made the decision as to when DNA testing should be performed, he did not

2

Facts at ¶ 5.) She also provides evidence that Heneks and Weaver jointly decided which blood samples would be analyzed. (Id.)

In addition to Heneks's role in DNA testing, Plaintiff alleges that Heneks made a decision to arrest her despite his knowledge of exculpatory evidence. (Id. at ¶¶ 8-9.) Specifically, Plaintiff offers evidence that there were three witnesses who saw that McKnight was the driver of the car on the night of the accident at the time that she and McKnight left a Sportsman's Club, a fifteen-minute drive from the scene of the accident. (Id. at ¶ 2.) During the course of the criminal investigation, Plaintiff obtained affidavits from these witnesses, and she provides evidence that her counsel discussed these with Heneks and submitted them to Heneks. (Exhibit AA to Plaintiff's Appendix to Statement of Facts, hereinafter "Plaintiff's Appendix," Doc. 86-29.) Heneks approved the decision to file criminal charges against Plaintiff, but the parties dispute whether Heneks participated in a decision to arrest Plaintiff and whether Plaintiff was, in fact, arrested after criminal charges were filed. (See Plaintiff's Statement of Facts at ¶ 9 (Heneks approved charges), ¶ 10 (facts supporting arrest); Heneks's Statement of Facts at ¶ 83 (Heneks approved charges), ¶¶ 72-79 (facts supporting lack of arrest).)

The criminal case proceeded to a jury trial in the Court of Common Pleas of Fayette County before the Honorable Nancy D. Vernon. On January 8, 2015, Judge Vernon entered a Judgment of Acquittal on all counts. (Plaintiff's Statement of Facts at ¶ 1; Heneks's Statement of Facts at ¶ 87-88.)

---

make a determination as to what evidence should be submitted for testing." (Heneks's Statement of Facts at ¶ 44.)

Plaintiff initiated the instant action on June 12, 2015. (Doc. 1.) Following this Court's Memorandum Order on Defendants' Motions to Dismiss (Doc. 36), the only claim remaining against Heneks is a claim against him in his personal capacity for false arrest.

**ANALYSIS**[5]

The Fourth Amendment to the Constitution provides "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. Amend IV. For purposes of a false arrest claim, an "arrest" is analyzed as a seizure of a person. See Aschroft v. al-Kidd, 563 U.S. 731, 735 (2011). Whether there was a seizure of a person turns on whether "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Florida v. Bostick, 501 U.S. 429, 434 (1991) (citation omitted). Put differently, the relevant question is whether "a reasonable person would feel free to 'disregard the police and go about his business.'" Id. (quoting California v. Hodari D., 499 U.S. 621, 628 (1991)); accord Schneyder v. Smith, 653 F.3d 313, 322 (3d Cir. 2011) ("*a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave*" (internal citation omitted)). The two elements of a successful false arrest claim under 42 U.S.C. § 1983 for a violation of rights secured by the Fourth Amendment are (1) an

---

[5] Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. See Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 172 (3d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on the pending motion for summary judgment, the Court must view the facts, and any reasonable inferences arising therefrom, in the light most favorable to the non-moving party. See Moody v. Atlantic City Bd. of Educ., 2017 WL 3881957, at *1 n.1 (3d Cir. Sept. 6, 2017) (citing Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005)).

4

arrest (2) that was made without probable cause. James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)).

Heneks's Motion for Summary Judgment rests on four arguments, which the Court will address in turn. Specifically, Heneks argues that: (1) Plaintiff was not arrested; (2) even if she was, Heneks did not participate in the arrest; (3) there was probable cause to support an arrest; and (4) Heneks enjoys absolute prosecutorial immunity for the false arrest claim. (Heneks's Brief in Support of Motion for Summary Judgment, hereinafter "Heneks's SJM Brief," 6, Doc. 62.)

## I. **Existence of Arrest**

### A. *Legal Standard*

There is tension among the decisions of the Court of Appeals for the Third Circuit as to the necessary conditions for a constitutionally significant seizure absent a formal arrest and booking. In DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005), the Court of Appeals for the Third Circuit found that the issuance of a summons for defiant trespassing coupled with a requirement to attend court appearances did not constitute a seizure "significant enough to constitute a Fourth Amendment violation." In other words, a requirement to appear in court to face criminal charges was found insufficient to constitute a constitutionally relevant seizure. In contrast, the Third Circuit found that requiring a person charged with arson to post a $10,000 bond, attend court appearances, maintain regular contact with Pretrial Services, and refrain from traveling outside New Jersey and Pennsylvania constituted a seizure under the Fourth Amendment. Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998). The court's analysis in Gallo rested heavily on the fact that Gallo was required to attend court

appearances at penalty of law.[6] The Gallo court also concluded, in analyzing relevant Supreme Court precedent, that a "government termination of freedom of movement intentionally applied," even if such termination "detains a citizen only momentarily" is a Fourth Amendment seizure. Id. at 223 (internal citations omitted). It is difficult to reconcile these cases' views of the threshold for a constitutionally relevant seizure.

Subsequent to DiBella, the Court of Appeals for the Third Circuit has adhered more closely to Gallo, distinguishing DiBella by noting that the pretrial restrictions in that case were truly minimal and that the seriousness of the criminal charge is an important factor for determining the existence of a seizure. See Black v. Montgomery County, 835 F.3d 358, 367-69 (3d Cir. 2016) (plaintiff's person was seized where she was charged with arson, required to post $50,000 unsecured bail, and required to attend court proceedings in Pennsylvania—far from her home in California); Schneyder, 653 F.3d at 321-22 ("When the state places constitutionally significant[] restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding, that person has been seized within the meaning of the Fourth Amendment."). But see Black, 835 F.3d at 367 n.7 ("We reiterate here that '[w]e hold open the

---

[6] Specifically, the court reasoned:
> When he was obliged to go to court and answer the charges against him, Gallo, like the plaintiff in Terry[ v. Ohio, 392 U.S. 1 (1968)], was brought to a stop. . . . Gallo's physical motion was subjected to authority that had the effect of making him halt. In the present state of our law, it is difficult to distinguish this kind of halt from the exercise of authority deemed to be a seizure in Terry.
> . . .
> In ruling that release on personal recognizance qualifies as "custody," the Court [in Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 301 (1984)] recognized that bail restrictions on travel as well as mandatory attendance at court hearings does restrain liberty, particularly because failure to obey, or failure to appear, constitutes a criminal offense under state law.

Gallo, 161 F.3d at 223.

possibility that some conditions of pre-trial release may be so insignificant as to not implicate constitutionally protected liberty interests.' Schneyder, 653 F.3d at 321 n.12.").

Heneks argues that two relevant decisions from the Western District of Pennsylvania apply a more stringent test for a constitutionally relevant seizure, similar to the test applied in DiBella. (Heneks's SJM Brief at 10-11.) In Benard v. Washington County, 465 F. Supp. 2d 461, 466, 469 (W.D. Pa. 2006), the court found that a plaintiff who was charged with theft, arrested and released on her own recognizance, and required to attend court proceedings before the charges against her were withdrawn, had not suffered a sufficient deprivation of liberty to constitute a Fourth Amendment seizure. Likewise, in DeForte v. Blocker, 2017 WL 1102655, at *10 (W.D. Pa. Mar. 24, 2017), the court found an insufficient deprivation of liberty where the plaintiff was charged with theft (including serious felony thefts) and was released on his own recognizance without bond before the charges were withdrawn. Heneks construes these cases as emphasizing physical constraints on liberty over other factors, and as essentially holding that the absence of physical constraints on a plaintiff's movement equates with the absence of a seizure. (See Heneks's SJM Brief at 11-13.)

This Court agrees that physical constraints are relevant, but disagrees that they are dispositive. Instead, to determine whether Plaintiff has made a sufficient showing at this stage to establish a constitutionally significant seizure, the Court will credit all of the factors considered by the Court of Appeals for the Third Circuit, including: the seriousness of the charged offense, plaintiff's objectively justified belief concerning her freedom to leave upon a government show of authority, and the onerousness of any requirements imposed on plaintiff—such as a requirement to appear in court.

### B. Evidence Supporting Arrest

The undisputed evidence in this case is sufficient to establish a constitutionally significant seizure. First, Plaintiff was charged with the serious offense of Homicide by Vehicle While Driving Under the Influence, which carries a mandatory minimum sentence of three years' imprisonment. 75 Pa. Cons. Stat § 3735(a). The Police Criminal Complaint that Weaver filed on June 14, 2013, which he supported with an Affidavit of Probable Cause, requested "that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges." (Exhibit EE to Plaintiff's Appendix at 6, Doc. 86-33.) The parties agree that Plaintiff "became aware of a warrant for her arrest," voluntarily surrendered to the local magisterial district judge, and was released on a $25,000 unsecured bond. (Heneks's Statement of Facts at ¶¶ 72-73, 77.) Thus, Plaintiff physically surrendered to a government show of authority, that is, the Criminal Complaint calling for her arrest. Cf. Albright v. Oliver, 510 U.S. 266, 268, 271 (1994) (where plaintiff turned himself into authorities upon learning of his arrest warrant, "his surrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment"). After her release, Plaintiff was required to appear in court for criminal proceedings, including a jury trial, "six times between January 16, 2014 and January 5, 2015." (Plaintiff's Brief in Opposition to Heneks's Motion for Summary Judgment, hereinafter "Opposition to Heneks's SJM," at 2, Doc. 74.) These required appearances increased the degree to which her liberty was genuinely curtailed by government action.[7]

---

[7] For purposes of Heneks's Summary Judgment Motion, the Court will not address Plaintiff's arrest on the night of the accident, as that arrest is not the subject of Plaintiff's false arrest claim against Heneks. The Court will also refrain from addressing facts that are disputed as to additional burdens imposed on Plaintiff because the undisputed facts are sufficient to show an arrest.

The Court finds that these facts are enough. The undisputed facts establish a deprivation of liberty sufficient to trigger the protection of the Fourth Amendment against unreasonable seizures and to satisfy the "arrest" requirement of a false arrest claim.

II.     **Heneks's Involvement in the Arrest**

Liability for a false arrest claim requires the personal involvement of a defendant. See Reynolds v. Smythe, 418 F. Supp. 2d 724, 730 (E.D. Pa. 2006) (citing Andrews v. City of Philadelphia, 895 F,2d 1469, 1478 (3d Cir. 1990). Heneks argues that "there has been no evidence developed [to show that] District Attorney Heneks actually participated in an arrest of the plaintiff." (Heneks's SJM Brief at 15.) Further, Heneks argues that no evidence shows that he directed Plaintiff's arrest. (Id.)

To the contrary, Plaintiff submits deposition testimony as evidence that Heneks participated in the decision to arrest her and approved this decision. (Plaintiff's Statement of Facts at ¶ 9.) Specifically, Heneks stated in his deposition: "They would bring the investigation to me. They'd say, you know, yea or nay on filing the charges . . . ." (Exhibit Q to Plaintiff's Appendix at 13, Doc. 86-19.) And Weaver stated in his deposition: "I know that [Heneks] called me and said, I need you to get these charges filed, so I did." (Exhibit D to Plaintiff's Appendix at 23, Doc. 86-3.) Because the charging document contained the application for the arrest warrant, this evidence would be sufficient for a jury to conclude that Heneks affirmatively directed Plaintiff's arrest.[8] As Heneks's direct involvement in the arrest is disputed and is highly

---

[8] Puzzlingly for his claim of non-involvement in the arrest, Heneks also offers the following: "District Attorney Heneks approved the bringing of criminal charges against Serena Richter because he believed that not only was there probable cause to pursue the charges, but that he thought a guilty verdict could be obtained." (Heneks's Statement of Facts at ¶ 83.)

9

material to liability, the Court finds that this cannot be a basis for summary judgment in Heneks's favor.

### III. Probable Cause for the Arrest

At the outset, the Court notes that the parties do not contest that probable cause existed to arrest the driver of the vehicle involved in the accident. Rather, the entire question of probable cause boils down to a question about the driver's identity: was there sufficient evidence to show that Plaintiff was the driver, when balanced against the strength of the evidence that would tend to show that McKnight was the driver?

There is ample evidence in the record to support each side of this equation. (Compare Plaintiff's Statement of Facts at ¶¶ 7-8, 11 (three witness affidavits identify McKnight as the driver and there are reasons to question Weaver's report on crash dynamics), with Heneks's Statement of Facts at ¶¶ 53-69 (Weaver's findings support a conclusion that Plaintiff was the driver).) If a reasonable jury could, upon consideration of this evidence, conclude that probable cause was lacking, it would be improper to grant summary judgment for a defendant on the issue of probable cause. Halsey v. Pfeiffer, 750 F.3d 273, 300 (3d Cir. 2014); Groman v. Township of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995).

Heneks asks the Court to conclude that the strength of the evidence provided by Weaver's crash analysis report is sufficient as a matter of law to establish probable cause. (See Heneks's SJM Brief at 16-17.) However, the Court must also consider unfavorable facts that the arresting officer would have known at the time of the arrest. Andrews v. Scuilli, 853 F.3d 690, 698 (3d Cir. 2017) (citing Dempsey v. Bucknell Univ., 834 F.3d 457, 468 (3d Cir. 2016)). As noted above, Plaintiff has offered proof that Heneks and Weaver knew of exculpatory evidence at the time of the arrest. Therefore, the Court finds that the task of balancing the weight of

Weaver's report against the strength of Plaintiff's exculpatory witness affidavits in order to assess the existence of probable cause is a task for a jury. The Court declines to grant summary judgment on this basis.

## IV. Absolute Prosecutorial Immunity

As this Court stated in its Memorandum Order (Doc. 36) on Defendants' Motions to Dismiss, to establish entitlement to absolute immunity, a "prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question." Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008). "This inquiry focuses on the nature of the function performed," since "immunity attaches to actions intimately associated with the judicial phases of litigation, but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." Id. (internal quotations and citations omitted).

A prosecutor's activities are protected when they "are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." Burns v. Reed, 500 U.S. 478, 494 (1991). Said another way, "when a prosecutor performs the investigative functions normally performed by a detective or police officer, the prosecutor is entitled only to the same qualified immunity already enjoyed by such law enforcement officials." Buckley v. Fitzsimmons, 509 U.S. 259, 276 (1993). That this investigation ended with the filing of criminal charges against Defendant does not necessarily mean that all of Heneks's activities preceding those charges are entitled to absolute immunity. "[W]here the role as advocate has not yet begun . . . or where it has concluded, absolute immunity does not apply." Yarris v. County of Delaware, 465 F.3d 129, 137 (3d Cir. 2006) (quoting Spurlock v. Thompson, 330 F.3d 791, 799 (6th Cir.2003)) (internal quotation marks omitted).

While the decision to prosecute is entitled to absolute immunity, Kulwicki v. Dawson, 969 F.2d 1454, 1463-64 (3d Cir. 1992) (citing Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)), a prosecutor is not entitled to absolute immunity for directing an officer to obtain an arrest warrant prior to the filing of charges. Spiker v. Allegheny Cnty. Bd. of Probation & Parole, 920 F. Supp. 2d 580, 600 (W.D. Pa. 2013) (citing Walker v. Clearfield Cnty. Dist. Att'y, 413 Fed. App'x 481, 483 (3d Cir. 2011)). Once charges have been filed, however, a prosecutor is absolutely immune for subsequent actions to obtain an arrest warrant. Spiker, 920 F. Supp. 2d at 600-601.

With these principles in mind, and a more developed factual record at hand, the Court will again turn to the specific actions that Heneks is alleged to have taken in order to determine whether he is entitled to absolute immunity for his conduct culminating in Plaintiff's arrest.[9]

Plaintiff points to two categories of actions that fall outside the role of state advocate: Heneks's activities during the criminal investigation, and Heneks's approval of Plaintiff's arrest. As to the first category, Plaintiff provides evidence that Heneks spoke to Weaver about whether to submit items containing blood for collection of DNA evidence. (Plaintiff's Statement of Facts at ¶ 5.) She also provides evidence that Heneks and Weaver jointly decided which blood samples would be analyzed, including a decision to refrain from analyzing several specimens. (Id.) Finally, she provides evidence that Heneks received her witness affidavits, was aware of their potentially exculpatory contents, and forwarded them to one or more investigating officers. (Id. at ¶ 2.) As to the second category, Plaintiff provides evidence that Heneks directed her arrest before charges were filed. (Id. at ¶¶ 8-9.) In fact, the parties agree that Heneks approved the

---

[9] Heneks does not argue for summary judgment based on qualified immunity, but rather rests his argument solely on absolute immunity. Therefore, the Court will not reach the question of whether Heneks would be entitled to summary judgment on the basis of qualified immunity.

12

decision to file the Police Criminal Complaint against Plaintiff. (See Heneks's SJM Brief at 22.) This document, in addition to initiating the criminal proceedings against Plaintiff, contained an application for her arrest warrant. (Exhibit EE to Plaintiff's Appendix at 6, Doc. 86-33.)

Heneks disputes his involvement in the investigation (Heneks's SJM Brief at 22), contends that absolute prosecutorial immunity is wide-ranging for sound policy reasons, and takes the thrust of Plaintiff's argument to be that the prosecution "lacked any merit and was contrary to all evidence developed during the investigation," (id. at 23). However, the Court has already dismissed Plaintiff's malicious prosecution claim against Heneks. The Court addresses its current analysis solely to Heneks's conduct prior to the "prosecution" phase of activities surrounding the June 16, 2011 car accident. Because Plaintiff provides evidence that Heneks participated in the investigation and made a pre-charge decision to arrest—functions that closely parallel those of an investigating officer rather than a prosecutor—the same qualified immunity available to investigating officers shields Heneks here. The Court finds that Heneks is not entitled to absolute immunity for this conduct.

* * *

Accordingly, for the reasons stated above, Heneks's Motion for Summary Judgment (**Doc. 61**) is **DENIED**.

IT IS SO ORDERED.


March 22, 2018                               s/Cathy Bissoon
                                             Cathy Bissoon
                                             United States District Judge

cc (via ECF email notification):

All Counsel of Record